UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLEEN SHERWOOD,

        Plaintiff,

v.                                        Case No. 1:12-cv-37
                                          Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                  /

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on July 3, 1963 (AR 125).[1] She alleged a disability onset date of December 20, 2008 (AR 125). Plaintiff completed two years of college (AR 130). She had previous employment in concrete products sales, hardware sales and kitchen and bath design (AR 131). Plaintiff identified her disabling conditions as post lumbar laminectomy, lumbar fusion and herniated discs (AR 129). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 16, 2011 (AR 19-27). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 20, 2008 and that she met the insured status requirements under the Act through March 31, 2013 (AR

21). Second, the ALJ found that through the date last insured, plaintiff had a severe impairment of degenerative disc disease status post lumbar laminectomy and fusion (AR 21). The ALJ, however, found that plaintiff's depression was not severe, because it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities" (AR 21). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22). Specifically, the ALJ found that plaintiff did not meet the requirements of Listing 1.04 (Disorders of the spine) (AR 22).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform sedentary work, except

> [S]he can only occasionally push and pull with her right lower extremity. She can never climb or crawl, but can occasionally balance, stoop, crouch, and kneel. She requires the option to sit and stand every thirty minutes. She must avoid all exposure to workplace hazards such as unprotected heights and moving machinery.

(AR 23). The ALJ further found that plaintiff could not perform any past relevant work (AR 26).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 26-27). Specifically, plaintiff could perform the following jobs: surveillance system monitor (16,700 jobs); charge account clerk (33,000 jobs); and call-out operator (16,000 jobs) (AR 27). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 20, 2008 (the alleged onset date) through June 16, 2011 (the date of the decision) (AR 27).

## III. ANALYSIS

Plaintiff raised three issues on appeal.

### A. The ALJ improperly rejected the treating physician's opinion and made an incomplete RFC finding.

Plaintiff contends that the ALJ erred by rejecting the opinions of plaintiff's treating physician, Keith Rose, M.D., as set forth in the "Proviser & Phillips Questionnaire" dated March 22, 2011. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2). An ALJ, however, is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff underwent back surgery in March 2004 (AR 23, 242-53). She reported 60% pain relief for approximately three months after the surgery, but then began to experience severe pain again (AR 23, 242-53). An MRI of the lumbar spine performed in September 2006 showed chronic degenerative facet disease at L5-S1 with focal broad based lateral disc herniation on the right causing lateral recess compromise and mass effect on the adjacent nerve root (AR 23-24, 238). Plaintiff underwent a second spinal surgery on January 16, 2008, which consisted of an L5-S1 minimally invasive decompression infusion (AR 24, 250).

In the questionnaire, Dr. Rose indicated that he had treated plaintiff 26 times between August 2006 and March 2011 (AR 334). Dr. Rose listed the following medical diagnoses: right piriformis syndrome; lumbago; right sacral radiculitis status post L5-S1 decompression/fusion; chronic lumbar facet arthropathy at L4-5 and L5-S1; right greater than left sacroilitis; multilevel

6

degenerative disc disease; lumbar discogenic pain; right greater trochanteric bursitis; disturbance of skin sensation; antalgic gait; chronic urinary frequency; variant migraine; depression; a chronic pain syndrome; poorly controlled hypertension; myofascial pain syndrome; muscle spasms; hyposomnia; chronic hamstring contractures; and weakness/deconditioning. (AR 334-35).

The questionnaire included a number of multiple-choice questions regarding plaintiff's condition and limitations. The ALJ provided a summary of Dr. Rose's responses:

> Dr. Rose completed a medical source statement regarding the claimant's severe impairments (7F/2). He reported the claimant exhibited negative straight leg raising. Her range of motion was limited by pain and she had an antalgic gait. Id. Dr. Rose opined the claimant is unable to perform even sedentary work on a sustained basis (7F/4). He stated the claimant is only able to sit for less than an hour and stand and/or walk for less than an hour in an 8-hour workday (7F/6). He opined the claimant has limitations on her ability to lift weight. Id. He added it is necessary for the claimant to lie down for substantial periods during the day (7F/7). He added there is evidence of nerve root compression at S1 (7F/8).

(AR 24). Dr. Rose indicated that, based upon his examinations and review of objective studies, plaintiff has been partially impaired since August 7, 2006 and that she has been totally impaired since December 19 2008 (AR 337). The doctor also indicated that plaintiff could not perform sedentary or light work on a sustained basis and that her impairments were permanent because "[t]here is no known cure for Failed Back Surgery Syndrome (FBSS)" (AR 337-38).

The ALJ assigned little weight to Dr. Rose's opinion:

> The undersigned finds Dr. Rose's opinion inconsistent with the medical evidence of record, including his own treating records. Dr. Rose's records contain very few objective findings supportive of such a restrictive RFC. Moreover, the evidence does not reflect any objective testing reflecting nerve root compression. In fact, an April, 2009, EMG report shows no "classic" evidence for lumbosacral nerve root compression (5F).
>
> The records show the claimant exhibited range of motion and low back pain upon palpation, however there is no suggestion that this pain warrants the restrictions described by Dr. Rose (5F and 7F). An April 2009 treatment record from Dr. Rose

7

> indicated the claimant had "non-antalgic gait" (5F/30). In addition, the claimant reported at least 50% reduction in her pain with her prescribed medications (5F/3). Therefore, the undersigned assigns little weight to Dr. Rose's opinion.

(AR 24-25). The ALJ also relied on the opinion of plaintiff's neurosurgeon, Parag Patil, M.D., Ph.D., who stated on March 4, 2008 (after plaintiff's final surgery), that she could return to her normal activities but should not lift excessive weights (AR 24, 250). Based on this record, the ALJ articulated good reasons for not crediting the opinion of Dr. Rose. *See Wilson*, 378 F.3d at 545.

Plaintiff contests the ALJ's determination, asserting that the ALJ rejected Dr. Rose's opinion "based on his own lay opinion that the evidence does not support the treating doctor's findings" and that "the ALJ improperly played doctor in the formulation of an RFC and fails to give good reasons for the rejection of the treating opinion." Plaintiff's Brief at p. 11. However, plaintiff provides no explanation or evidence to support the ALJ's alleged improper conduct beyond conclusory claims of error. A court need not make plaintiff's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

Finally, the court rejects plaintiff's contention that the ALJ did not consider her non-severe impairment of depression in combination with other impairments. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible

error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* Here, the ALJ continued to evaluate plaintiff's claim after finding that she had both severe and non-severe impairments.

The Social Security Act requires the agency "to consider the combined effects of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988); 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). The Sixth Circuit has found that an ALJ's analysis of a claimant's combined impairments sufficient where the ALJ referred to a "combination of impairments" in deciding the claimant did not meet the listings, the ALJ referred to the claimant's "impairments" as not being severe enough to preclude performance of his past relevant work, the ALJ's decision was made after careful consideration of the "entire record," and, all of the claimant's impairments were discussed individually in the decision. *See Gooch v. Secretary of Health and Human Services*, 833 F.2d 589, 592 (6th Cir. 1987). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Id.* The Sixth Circuit has also found that the ALJ properly considered the combined effects of the claimant's impairments where the ALJ's decision referred to the claimant's "severe impairments" and "combination of impairments." *See Loy v. Secretary of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir. 1990). Here, the ALJ referred to the issue as whether plaintiff was disabled under the Social Security Act "by reason of any medically

9

determinable physical or mental impairment or combination of impairments" (AR 19). In addition, the ALJ referred to his consideration of plaintiff's medically determinable impairments or combination of impairments in evaluating her disability claim (AR 20, 22). The ALJ also stated that he made his determination "[a]fter careful consideration of the entire record" (AR 21). The ALJ's decision indicates that he considered the combined effects of plaintiff's impairments. *See Loy*, 901 F.2d at 1310; *Gooch*, 833 F.2d at 592. Accordingly, these claims of error will be denied.

> B. **The ALJ failed to perform a credibility assessment as required by SSR 96-7p.**

Plaintiff contends that the ALJ improperly evaluated her credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints

must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, plaintiff contends that the ALJ mishandled the credibility evaluation because he failed to consider SSR 96-7p and the factors set forth in 20 C.F.R. § 404.1529(c)(3). SSR 96-7p requires that the ALJ provide specific reasons for a credibility determination, providing in pertinent part:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well- reasoned determination or decision.

SSR 96-7p.[2]

In addition, 20 C.F.R. § 404.1529(c)(3) sets forth seven factors relevant to a claimant's symptoms which the Commissioner considers: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). An ALJ's failure to include detailed reasons in a credibility determination may constitute harmless error if the record demonstrates that the claimant had a sufficient opportunity to voice his subjective complaints and if the record shows that the ALJ took those complaints into account. *See, e.g., Spicer v. Apfel*, 15

---

[2] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

Fed. Appx. 227, 234 (6th Cir. 2001) (the court found that such a harmless error existed when the ALJ took into account the claimant's subjective accounts of his pain on the one hand, and the objective medical evidence on the other, and concluded that the claimant was exaggerating his complaints of pain).

During the administrative hearing, the ALJ asked plaintiff, in her opinion, "what keeps you from being able to work at this time" (AR 41). In response, plaintiff testified:

> It is the low back pain and the right leg mostly, numbness – you know, pins and needles – it goes numb all the time. In fact, it's numb right now. I can't do anything I used to do I can't stand for a long period of time. I can't sit. I can't walk very far without having to lay down. Pretty much that's about it.

(AR 42). After considering the medical record, the ALJ found that despite her impairments, plaintiff was able to perform sedentary work which required only the occasional use of her right lower extremity, and which allowed her the option to sit and stand every thirty minutes (AR 23).

In reaching this determination, the ALJ found plaintiff's claim that she suffered from a disabling back and leg problems as less than fully credible:

> Regarding the credibility of the claimant's allegations of disability, the undersigned finds them less than fully credible. The claimant reported to Dr. Rose that she was laid off from work, a non-medical reason for leaving employment, on December 20, 2008, the claimant's alleged onset date. (5F/7) The claimant also indicated to Dr. Rose that she was waiting to hear back from her employer as to whether or not she would be able to return to work (5F). In addition, the claimant reported beginning schooling for medical billing and coding (5F and 7F).
>
> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. At the hearing, the claimant testified that she spends approximately 20 hours a week studying. The record also shows the claimant made and planned several long distance trips, including a few trips to California, one trip to Mississippi, and one trip to Ireland (5F and 7F). The claimant reported that she traveled to California to care for her mother (5F). The claimant acknowledged that she traveled by plane, a form of transportation which does not allow for one to move around with the frequency to which the claimant testified is required. Moreover, the claimant's husband

12

> reported that the claimant is able to engage in normal daily activities including meal preparation, household chores, and shopping. Given the level of the claimant's functioning, the undersigned finds the claimant's allegations of disability less than fully credible.
>
> The claimant's medications are Hydrocodone and Dilaudid. While the claimant alleges side effects of sleepiness and forgetfulness, the medical records, such as office treatment notes, do not corroborate those allegations.
>
> In sum, the above residual functional capacity assessment is supported by the medical evidence of record. Although the evidence establishes underlying medical conditions capable of producing some pain or other limitations, the substantial evidence of record does not confirm disabling pain or other limitations arising from those impairments, nor does it support a conclusion that the objectively determined medical conditions were of such severity that they could reasonably be expected to give rise to disabling pain or other limitations. The undersigned finds that the preponderance of credible evidence establishes that the claimant experienced no greater than, at most, mild to moderate functional limitations upon her ability to perform basic work activities as described in 20 CFR 404.1521(b) and 20 CFR 921(b).

(AR 25-26).

The ALJ's credibility finding is supported by substantial evidence. Plaintiff's husband stated in his third party function report that she could lift ten pounds, stand 20 minutes and needed to change positions when sitting (AR 161). These restrictions are largely consistent with the ALJ's RFC determination. In addition, in December 2009, Dr. Rose allowed plaintiff to lift 10 pounds above-the-knees and below-the-waist and to lift up to 15 pounds from waist to shoulder height (AR 319). Such lifting requirements are consistent with the exertional requirements of sedentary work, which would involve lifting no more than 10 pounds at a time. *See* 20 C.F.R. § 404.1567(a). In addition, the ALJ noted that plaintiff did not stop working in December 2008 due to a medical condition; rather, she was laid off, and expected to return to work ("Today [plaintiff] indicates that she was laid off from her job at Emmet Brick and Block on December 20, 2008. Reportedly, this is a 2 month layoff.") (AR 269).

While plaintiff testified that her medications (Hydrocone and Dilaudid) made her sleepy and forgetful (AR 42-43), Dr. Rose's treatment notes reflect that plaintiff had no "medication untoward side-effects" (AR 265-328, 343-76). Allegations of a medication's side effects must be supported by objective medical evidence. *Farhat v. Secretary of Health and Human Servs.*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992). *See Bentley v. Commissoner of Social Security*, 23 Fed. Appx. 434, 435 (6th Cir. 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Secretary of Health & Human Services*, No. 92-1632, 1993 WL 291301 at *7 (6th Cir. Aug. 2, 1993) (no objective medical evidence supported claimant's allegation that Tylenol 3 made him so drowsy he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant).

The record also reflects that plaintiff engaged in various daily activities which were consistent with the ability to perform sedentary work. For example, the record reflects that plaintiff returned to school taking online courses in medical billing and coding (which involved performing schoolwork for 20 hours per week online), drove short distances, grocery shopped with her husband, did laundry and some cleaning, read, and occasionally did craft work (AR 43, 44, 157, 159, 160, 321). In addition, plaintiff traveled quite extensively since her alleged disability onset date of December 20, 2008. Plaintiff took a nine-day trip to Ireland in July 2009 (AR 301, 304). She flew to California to visit and assist her ailing mother at various times in 2009, 2010 and 2011 (AR 45, 310, 317, 321, 325, 368, 374). Plaintiff also took a trip to Mississippi in October 2010 (AR 349).

"An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d 525, 532 (6th Cir. 1997). While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). *See also*, *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) (ALJ could properly consider claimant's multiple vacations as indicating a lesser impairment than claimed, noting that "acts which are inconsistent with a claimant's assertion of disability reflect negatively upon the claimant's credibility"), quoting *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (internal quotation marks omitted).

The ALJ's credibility determination is supported by substantial evidence. There is no compelling reason to disturb the ALJ's credibility determination in this case. *Smith*, 307 F.3d at 379.

  **C. The ALJ erred in finding work exists at step five.**

Plaintiff contends that the ALJ improperly relied on the vocational expert's (VE's) testimony at step five of the sequential evaluation. An ALJ's finding that a plaintiff possesses the

capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990).

In this case, the ALJ submitted interrogatories to the VE which mirrored the RFC determination made at step four of the sequential evaluation (AR 23, 201). In response to these interrogatories, the VE stated that the hypothetical individual could perform 65,700 unskilled sedentary jobs in the national economy consisting of surveillance system monitor (16,700 jobs), charge account clerk (33,000 jobs), and call-out operator (16,000 jobs) (AR 201-02). On appeal, plaintiff objects to the VE's opinion because the jobs were not consistent with the definitions found in sources such as the *Dictionary of Occupational Titles* (*DOT*) and the VE testified as to national job numbers, not the numbers of jobs available in plaintiff's region.

As an initial matter, plaintiff's objections were not preserved at the administrative level. In this case, the VE's testimony was obtained through written interrogatories rather than by an opinion at the administrative hearing. The ALJ advised plaintiff of the VE's interrogatory answers and invited her to file a written response (AR 206-07). Plaintiff, through counsel, responded to the ALJ's letter, but did not object to the VE's testimony as either inconsistent with

the *DOT* or deficient for failing to identify jobs in the plaintiff's region. "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Commissioner of Social Security Administration*, No. 1:11-cv-1290, 2012 WL 4434078 at 3 (N.D. Ohio Sept. 24, 2012), citing *Hammond v. Chater*, No. 96-3755, 1997 WL 338719 at *3 (6th Cir. June 18, 1997) (finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal). *See, also, Bechtold v. Massanari*, 152 F.Supp.2d 1340, 1347 (M.D. Fla. 2001) ("[Claimant], when squarely presented with an opportunity to object to the characterization by the administrative law judge of the nature of her past relevant employment, failed to do so. Such failure constitutes a waiver of her right to raise the argument before this Court at this time.") *Cf. McClanahan v. Commissioner of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006) (stating that "counsel may not now complain" about the substance of the VE's testimony "because he failed to cross examine [the VE] when he had an opportunity to do so" at the administrative hearing); *Harper v. Secretary of Health and Human Services*, 978 F.2d 260, 265 (6th Cir. 1992) (in rejecting plaintiff's contention that the agency misled plaintiff about her right to future appeals, court observed that "[b]ecause the record does not indicate that the issue was raised at the administrative level, we are not in a position to consider the issue"); *Helton v. Commissioner*, No. 99-5736, 2000 WL 658056 at *2 (6th Cir. May 9, 2000) (claimant's failure to dispute the VE's competency at the administrative hearing forfeits the issue for purposes of judicial review). Plaintiff's has waived these claims.

Even if plaintiff had preserved these issues, the claims of error are without merit. First, plaintiff contends that the VE's characterization of these jobs is flawed because the jobs

identified by the VE do not match the job descriptions in the *DOT* or the Occupational Information Network (O*NET). Plaintiff's Brief at p. 17. The court disagrees. The Sixth Circuit has rejected the argument that the Commissioner is bound by the *DOT*'s characterization of occupations, holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). *See Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995) (same). *See also*, *Monateri v. Commissioner of Social Security*, 436 Fed. Appx. 434, 446 (6th Cir. 2011) (noting that while 20 C.F.R. § 404.1566(d) provides that the Commissioner "will take administrative notice of reliable job information" from publications such as the *DOT*, "neither the Commissioner nor the VE has an obligation to employ the *DOT*") (italics added).

Second, plaintiff objects to the VE's interrogatory answers because although the VE identified jobs in the national economy, he failed to identify a significant number of jobs in the regional economy. The statute regulating the determination of whether a claimant can perform other work in the national economy is found at 42 U.S.C. § 423(d)(2)(A), which provides that:

> (A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). Similarly, 20 C.F.R. § 404.1560(c)(1), provides that such other work "must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country)."

"The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As the Sixth Circuit explained, this requirement can be met by looking to the jobs available in either the regional economy or the national economy:

> The Social Security Act, as amended, provides that "work which exists in the national economy means work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (emphasis added). The Commissioner is not required to show that job opportunities exist within the local area. *Dressel v. Califano*, 558 F.2d 504, 508–09 (8th Cir.1977).

*Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). *See also, Wendelin v. Astrue*, 366 Fed. Appx 899, 903 (10th Cir. 2010) (court rejected claimant's contention that the 1,059 jobs identified by the VE in her home state of Colorado were not sufficient to qualify as a "significant" number of jobs, where the VE also found that there were 44,591 jobs nationally, and the claimant did not argue that the number of jobs nationally was not "significant"). The ALJ found that a person with plaintiff's limitations could perform 65,700 jobs nationally. Plaintiff did not dispute that this number of jobs nationally was a significant number for purposes of denying disability at step five of the sequential evaluation. Plaintiff's claim of error will be denied.

## V. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will enter forthwith.


Dated: March 25, 2013 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge